UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MEGAN ROUGH, individually and on behalf of all similarly situated current and former employees of Defendants in the State of California;

Plaintiff,

v.

COSTCO WHOLESALE CORPORATION, a Delaware Corporation; and DOES 1-50, inclusive,

Defendants.

No. 2:19-cv-01340-MCE-DB

**MEMORANDUM AND ORDER**

Through this action, Plaintiff Megan Rough ("Plaintiff") seeks relief from Defendant, Costco Wholesale Corporation ("Defendant") for violations of the California Labor Code and the Industrial Welfare Commission Wage Orders. Plaintiff, individually and on behalf of all other similarly situated employees, filed a Class Action Complaint in the Superior Court of California, County of Solano, after which Defendant removed Plaintiff's case to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). ECF No. 1. Presently before the Court is Plaintiff's Motion to

///

///

1

Remand, which is fully briefed. ECF No. 5. For the following reasons, that Motion is DENIED.[1]

## BACKGROUND[2]

Plaintiff brings the present action on behalf of herself and all current and former non-exempt, hourly-paid employees who worked for Defendant within California and who worked one or more closing shifts during the period from four years preceding the filing of this Complaint to final judgment. Defendant employed Plaintiff as a front-end associate in its store warehouse located in Woodland, California, from December 2017 to January 2018, and in another warehouse located in Vacaville, California, from March 2018 to April 2019.

Plaintiff alleges that she and other similarly situated employees continued to work after business hours at Defendant's stores. After the stores' doors were closed to customers and locked, Defendant required Plaintiff and other similarly situated employees to clock out and then walk to a designated exit location. The employees then had to call and wait for a manager to meet them at the designated exit location. When the manager arrived, he or she would inspect the employees' bags for store merchandise. After checking the employees' bags, the manager would radio the stores' security guards to ensure the parking lot was safe before the exit doors were opened.

Accordingly, according to Plaintiff, employees were not relieved of their duties until several minutes after clocking out and were not compensated for the time they were on-duty and required to complete the exit security procedure. Plaintiff defines two classes of similarly situated employees. First, Plaintiff seeks to represent the Closing-Shift Class, which includes all current and former non-exempt employees who worked at

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Local Rule 230(g).

[2] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's Class Action Complaint. ECF No. 1-2.

2

Defendant's warehouse stores and who worked one or more closing shifts at any time from four years prior to the filing of the Complaint to the present. Second, Plaintiff seeks to represent a subclass of employees entitled the Waiting Time Penalties Subclass, which includes all members of the Closing Shift Class whose employment with Defendant ended at any time from three years prior to filing the Complaint to the present. The Complaint alleges the following claims under state law: (1) Failure to Pay Minimum and Regular Wages; (2) Failure to Pay All Overtime Wages; (3) Failure to Provide Accurate Wage Statements; (4) Failure to Timely Pay All Wages Due Upon Separation of Employment; and (5) Violation of California Business and Professions Code §§ 17200 et seq.

## STANDARD

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331. A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)-(2).

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)). Courts "strictly construe the

removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). "[I]f there is any doubt as to the right of removal in the first instance," the motion for remand must be granted. Id. Therefore, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

If the district court determines that removal was improper, then the court may also award the plaintiff costs and attorney fees accrued in response to the defendant's removal. 28 U.S.C. § 1447(c). The court has broad discretion to award costs and fees whenever it finds that removal was wrong as a matter of law. Balcorta v. Twentieth-Century Fox Film Corp., 208 F.3d 1102, 1106 n.6 (9th Cir. 2000).

**ANALYSIS**

CAFA gives federal district courts original jurisdiction in any civil action where: (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," (2) the action is pleaded as a class action involving more than 100 putative class members, and (3) "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d). CAFA also provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." Id. § 1332(d)(6).

The only question for this Court to resolve as to the instant Motion is whether the amount in controversy in this action exceeds $5,000,000. "A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014). When a plaintiff challenges the amount in controversy under CAFA, the Ninth Circuit requires the defendant opposing remand to demonstrate, by a preponderance of the evidence, that the amount in controversy will likely exceed $5,000,000. Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015).

Where damages are not stated in the complaint and plaintiff contests defendant's assertion of the amount in controversy, the defendant must submit competent, summary judgment-type evidence relevant to the amount in controversy at the time of removal in order to carry its burden. Id. Although a defendant may rely on good faith calculations to satisfy its burden, those calculations must not be based on unreasonable or speculative assumptions. Ellis v. Pac. Bell Tel. Co., No. SACV 10-01141, 2011 WL 499390, at *2 (C.D. Cal. Feb. 10, 2011); Ibarra, 775 F.3d at 1197 ("[A] damages assessment may require a chain of reasoning that includes assumptions. When that is so those assumptions cannot be pulled from thin air but need some reasonable ground underlying them.").

In its notice of removal, Defendant asserts that the amount in controversy exceeds $5,000,000 on Plaintiff's waiting time penalties under California Labor Code § 203 alone. Notice of Removal, ECF No. 1, at 6. In support of its amount in controversy calculation, Defendant offers the Declaration of Sarah A. Rajski, Defendant's Director of Personnel. Rajski Decl., ECF No. 7-1. The Rajski Declaration states that the Waiting Time Penalties Subclass comprises of 32,808 employees who worked on average over four hours a day at a minimum of $10 per hour. See id. ¶ 7.

Under California Labor Code § 203, employees are entitled to continuing wages for up to thirty days as a penalty for an employer's failure to provide final pay within a certain time following conclusion of employment. Cal. Labor Code § 203. Defendant calculates that the waiting time penalties place $39,369,600 into controversy by assuming thirty days of four-hour pay ($1,200) for each member of the Waiting Time Penalties Subclass (32,808 x $1,200). Def.s' Opp. Mot. Remand, ECF No. 7, at 11. If true, then Plaintiff's other claims and potential ability to recover attorneys' fees would not need to be calculated for purposes of this Motion.

Plaintiff contends that Defendant failed to meet its burden to demonstrate the requisite jurisdictional amount because Defendant's evidence fails to identify the number of class members entitled to waiting time penalties. Pl.'s Reply, ECF No. 8, at 2.

5

1 | However, the Rajski Declaration states that there are 32,808 employees that fall within
2 | this subclass. Rajski Decl., ECF No. 7-1, ¶ 7. Defendant further relies on the Complaint,
3 | which defines the Waiting Time Penalties Subclass as all members of the Closing Shift
4 | Class whose employment with Defendant ended at any time during the three years
5 | preceding the filing of the Complaint on May 28, 2019. Compl., ECF No. 1-1, at 10;
6 | Def.s' Opp. Mot. Remand, ECF No. 7, at 5.

7 |       Additionally, Defendant assumed a 100 percent violation rate because the
8 | Complaint alleges that Defendant did not pay the Waiting Time Penalty Subclass
9 | members wages for the off-the-clock closing procedures and Defendant has no practice
10 | of paying terminated employees after termination of employment. The Ninth Circuit has
11 | held that an unsupported assumption of a 100 percent violation rate is unreasonable.
12 | Ibarra, 775 F.3d at 1199. However, based on Plaintiff's Complaint and the Rajski
13 | Declaration, the Court finds Defendant provided enough evidence to support its
14 | calculation for waiting time penalties. Because the Complaint alleges that none of the
15 | Waiting Time Penalty Subclass members were paid wages for remaining on-duty after
16 | hours and that Defendant does not have a practice of paying terminated employees
17 | following their termination, a 100 percent violation rate can be reasonably inferred.

18 |       Finally, Defendant provided waiting time penalty calculations that were more
19 | conservative than the figures from the Rajski Declaration, which showed an average
20 | hourly rate of $12 and an average working day of 6 hours. Def.s' Opp. Mot. Remand,
21 | ECF No. 7, at 11. As stated earlier, Defendant's conservative calculations totaled
22 | $39,369,600, but if the more accurate figures from the Declaration were applied, the
23 | amount in controversy would rise to $70,865,280. The Court finds that Defendant has
24 | ///
25 | ///
26 | ///
27 | ///
28 | ///

established to a legal certainty that the amount of waiting time penalties alone well exceeds $5,000,000, and thus the Court has jurisdiction pursuant to CAFA.

**CONCLUSION**

For the reasons set forth above, Plaintiff's Motion to Remand, ECF No. 5, is DENIED.

IT IS SO ORDERED.

Dated: March 10, 2020

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE